Good morning, Judge Tallman and members of the Court. My name is Robert Hoban, and I represent the petitioners in this matter. And with the permission of this Court, I'd like to address the merits of this case and assist this Court in achieving the correct result based on the law in this matter. Very well. At the outset, I would note I'd like to reserve up to three minutes by way of rebuttal. Okay. I will try and help you. Thank you, sir. May it please the Court, we are here because of executive administration overreach as it relates to Drug Code 7350 for marijuana extract. And there are four overarching principles in this case that have a bearing on the Court's decision. Number one, the issue of government overreach. Number two, the plain language of the final rule itself. Number three, staleness, the five-year period between the proposed rule and the final rule. And number four, Your Honors, the issue of intervening legislation. There was a seismic shift in United States cannabis policy in 2014 with the enactment of the Farm Bill, specifically Section 7606 involving industrial hemp. And that seems to have created some confusion perhaps with the Drug Enforcement Administration. Now, the executive branch refuses to honor. Counsel, can I ask a question? Maybe this grossly oversimplifies what may be a far more complicated case. But doesn't this really boil down to the addition of a new tracking code that the DEA purports to enact in this rule in order to meet its treaty obligations to other countries around the world in order to determine what portion of the marijuana plant is being utilized for legitimate industrial purposes versus clandestine, at least under federal law, illegal manufacturing or distribution of substances that contain high THC content? Indeed, Your Honor. It is a four-digit drug code. So what are you afraid of? I guess that's really where I'm going with the question. Why is the industry so concerned that if they fill out forms for DEA using this code, telling the Drug Enforcement Administration that they're making various products, which are otherwise, I think, very useful, what's the industry afraid of? Like in Hemp 2, HIA versus DEA from 2004, which involved a similar drug code, 7370, in that context, the drug code itself was written in a fashion that was far beyond the congressional authorization to the DEA for definition of that particular purpose. This drug code does not define marijuana extract as marijuana is defined under 21 U.S.C. 802 subsection 16, but rather, Your Honor, it defines something that's cannabis extract. It specifically talks about the genus cannabis, and that is not a controlled substance. So what are the petitioners afraid of? We've seen this drug code utilized week after week since its enactment to seize, to cause criminal enforcement against lawful operators who require no DEA registration. Give us one example of the police in North Dakota. Are there other examples that are not referenced in either the record or your briefing? Yes, Your Honor. There's a number of examples by way of affidavit that were, in fact, attached to the reply brief. Examples of Customs and Border Patrol using this literally on a weekly basis to suggest that these products are, in fact, controlled substances when Congress has explicitly said they're not. It's very unusual, counsel, for declarations to be admitted at the reply stage of the brief on appeal. Was this information in the administrative record at the time of the rulemaking? No, sir. Are you now adding additional information at the reply stage of the court of appeals? For the first time, the injury element was challenged in the response brief. Therefore, we attached affidavits in response to that particular item raised by the DEA in our reply brief, and there were a dozen affidavits detailing the injury and the practical impact and application of this four-digit drug code. Do you have any authority that permits us to expand the record in this way? Because I'm not certain whether or not we can properly consider it. Your Honor, I believe this goes to a standing issue, standing in terms of the injury issue, and I see no requirement under the law, procedurally or otherwise, that would limit the Petitioner's ability to suggest and respond, frankly, to a pointed challenge to standing an injury in this case. And that's why those affidavits ended up in the reply brief. All right. So there is very real injury that occurs by virtue of the application of this rule. This rule on its face, if you read the rule on its face, it does not comply with the law. It's unfair to the sister agencies of the DEA, both at the State and Federal level. It's unfair to law enforcement to have this four-digit code. Let me follow up on Judge Tallman's dialogue with you. It seems to me that your legal challenge through the administrative process is what you must do to have us contravene the rule. But it seems to me what the industry is concerned about is that the stocks, the members of the industry use to produce industrial products, may become a scheduled substance because they contain some amount of cannabinoid. I mean, it seems to me that at the heart of the matter, that's what you're, quote, unquote, concerned about, afraid of. Am I right about that? Stocks, based on the definition of marijuana, which is limited. However, Your Honor, the Farm Bill authorized the entire plant, the entire plant, so long as it's below .3 percent to be utilized for these purposes. This rule explicitly makes those products, which are lawful, Congress has said that they're lawful, it makes them controlled substances. All right. Okay. I understand that. The clarification of the final rule, however, states that it wouldn't, the final rule wouldn't apply to portions of the plant with only, quote, trace amounts of cannabinoids. So, effectively, it seems the DEA, at the end of the day, is aware of your concern and seems to have addressed it. Is it your position under your APA challenge that even with that clarification of the final rule, that the overriding procedural issues are so disturbing that we should, nevertheless, throw the rule out and have them start from scratch, if at all? The stem and the root of the problem is the final rule itself, Your Honor. With regard to the clarification, again, I go back to fundamental fairness, not just to the petitioners but to sister agencies. How can an agency such as Customs, such as the U.S. Patent and Trademark Office, so forth and so on, look at the rule, which says one thing, and then a clarification, which I would note has no force and effect of law whatsoever and was not enacted as a legislative rule but rather simply a policy statement,  So do we give any kind of deference to that, either under Chevron or our or any of the other precedents that talk about an agency with expertise in this area interpreting a regulation that it has just adopted? Like in Hemp 2, Your Honor, no Chevron deference should be afforded to the DEA here. And there's a very simple reason why. As you look at the Chevron case, the predicate is that there's ambiguity or lack of clarity in the law. Very clearly, cannabis is not a controlled substance. Very clearly, cannabinoids are not controlled substances but rather are subject to what's known as the source rule. The source of the cannabinoid dictates whether or not it's a legal or illegal substance. Because there's no ambiguity or because those are clear, precise statements, which, by the way, this Court has spoken to in 2004 in Hemp 2. There is no deference afforded to the DEA in this matter. The quote, for example, from Hemp 2 seems to be. Alito, let me stop you. Sure. I'm having a little difficulty following your argument because I thought you are concerned that the rule is overbroad and therefore is creating ambiguity in, at least in the law enforcement community, as to which products are covered. So isn't there, aren't you really challenging the rule as being ambiguous here? No, the rule is extremely clear. The law that underlies the rule, the law that Congress has enacted, which authorizes the DEA to enact certain provisions, that is what's clear. This rule does not follow that law. The rule on its face is very clear. The problem is it fundamentally does not follow any authority whatsoever granted to the DEA for the issuance of that rule. I would note 21 CFR 1308.03 specifically governs four-digit drug codes. And it says, for you to enact a four-digit drug code, you must identify something that is an expressly controlled substance. Genus cannabis is not. Cannabinoids are not. And that's the fundamental flaw with the language. The DEA can have a classification for marijuana extract so long as it follows the appropriate procedures. But that must say something akin to marijuana extract is an extract from marijuana, as it is precisely defined under 21 U.S.C. 80216, not the genus cannabis, because even the definition of marijuana does not say genus cannabis. It's the broadest classification. So is it your position that in furtherance of whatever our obligations are under international treaties, which are law binding on the agency, that it is completely improper for DEA to create a tracking code in order to meet those treaty obligations? If the tracking code flowed from the congressional delegation of the law, then sure. But I would suggest that that is a bald statement without justification. I'm not sure that's correct, counsel, because doesn't the treaty constitute an independent source of law that does not require congressional implementing legislation? It establishes an obligation that the United States agrees to be bound by when we enter into the treaty. It may or may not require ratification by Congress. But beyond that, it is an independent source of law, is it not? It is. But the proper procedure pursuant to the U.N. treaty was not followed here. The Attorney General has the authorization to schedule a new substance, which, by the way, is precisely what this rule does. It schedules things that Congress had not previously scheduled. And if the Attorney General chose to do that in alleged compliance with its U.N. obligations, there are specific findings and specific processes under 21 U.S.C. 8111D that must be followed, and that did not occur here, Your Honor. Okay. You wanted to save about three minutes. I do, Your Honor. Thank you. Very well. Let's hear from the DEA. May it please the Court. Sarah Carroll on behalf of the government. Judge Tallman, I think you put it just right when you described this as just the addition of a new tracking code basically for administrative purposes. This new identification number applies simply to a subset of the substances that the CSA has always defined as marijuana, which has always been a Schedule I substance under the CSA. And this is clear from the preamble to the rule. DEA said that several times in the preamble in a few different ways. DEA has since issued guidance, as Judge Murphy pointed out, which says in a few more ways that this new tracking code does not apply to any substance that wasn't previously controlled. DEA has said in this litigation, I'm here telling you today, that this does not apply to anything new. And all of those statements are entitled to deference under our review robins. They're given controlling weight as DEA's interpretation of its own regulation. So is the difficulty here born of the fact that the marijuana plant has various components, if I can use that term, some of which contain high quantities of THC or cannabinoids that are clearly scheduled under Schedule I of the Controlled Substances Act, but other parts of the plant have only trace amounts and are therefore useful for, if I can use the term correctly, non-hallucinogenic purposes and industrial uses, and that this code is essentially trying to separate the hallucinogenic portions of the plant from the non-hallucinogenic portions? So you're absolutely right, Your Honor, that the CSA treats different parts of the cannabis plant differently depending on which parts they are, and I think it does track basically along the lines that you described. But I want to be very clear that this code number applies only to the parts of the cannabis plant that are within the CSA definition of marijuana that are controlled. It does not apply at all to the parts that Congress exempted. So I'm – Well, okay, the nature of the problem as I understand it is that the stocks, if you will, contain trace amounts of the substances that are hallucinogenic, and those had been scheduled long ago in the CSA. The rulemaking proceeded as you have suggested here, but the industry has this concern that given the way government operates, arguments of overreach, things of this nature, the rule is not and cannot ever be clear because ultimately some enterprising DEA, FBI, Homeland Security agent, ICE agent, whatever the case may be, could read the stocks as being subject to the schedule. That's what I understand their concern is. Am I generally right about that? That's basically my understanding as well, but DEA has said expressly that it does not read this code number as – Okay, that's very good. Now here's my problem with that. My problem with that is that can we extrapolate from the rule the general good faith of the federal agency who's going to be enforcing it, or do the petitioners have a real point here that, okay, most DEA agents, most counsel like Ms. Carroll are generally well-intended people, but there's confusion here such that somebody can seize a bunch of hemp from a manufacturer in whatever state and deem it to be scheduled and prosecute them. If someone did that, the remedy would be to challenge that seizure in whatever proceeding was appropriate and say, hey, you misunderstood federal law. This is hemp that's exempt from CSA regulation, and it was wrong for you to seize it. And you could, in fact, rely on DEA's statements in the preamble, DEA's statements in its guidance, and those would probably help you get a pretty long way if your substance really was exempt from the CSA. You know, there's an old ancient curse, may you have a lawsuit with a valid defense. That's what that sounds like. I think that, you know, if something really was outside of CSA regulation, either because it was from an exempt part of the cannabis plant or because it was truly within the four corners of the farm bill, then someone would have a valid defense in an enforcement proceeding. Has the DEA responded in any way to industry concerns about overreach? Well, DEA And by response, I mean telling the police in North Dakota or whatever, hey, there's no change here, simply a clarification, and what you're doing is outside the scope of what we intended. So last March, DEA issued this public guidance document in response to questions that it had been receiving in which it stated very clearly that this does not apply to any new substances. If something is exempt from the CSA, this new code number does not apply to it, and that's publicly available. And, of course, you know, if a local law enforcement officer is confused about the regulation, the officer can look at that clarification. If, you know, one of petitioner's members is confronted with some kind of problem, they can rely on the clarification to establish that their activity is fine under federal law and that this regulation doesn't do anything new that's substantive. I would also note that petitioners failed to participate in any way in the rulemaking proceeding, which under basic principles of administrative law is another reason that the petition for review should exist. But other folks did, and some of them raised some of the concerns if industry has, correct? People did It's true that people did participate in the proceeding. petitioners rely on one comment that asked a question about the status of one particular cannabinoid, DEA answered that question, and then that commenter went on to say that that cannabinoid was exempt from the CSA, and DEA This is Sherry's comment? Yes. Sherry Berry, I think. Sherry Berry. Not the candy maker? No. Okay. I don't think so. All right. You never know. So DEA reasonably did not interpret that bold statement, which I think is something that people out in the world say a lot. DEA did not interpret that as a reference to, you know, parts of the cannabis plant and things like that. This Court stated in the Universal Health Services case that the question is whether a party has raised the specific argument that's at issue, and that is not, that did not raise the specific arguments that petitioners raised here. I'm happy to answer any further questions the Court might have. Anything more? I think nothing further. Thank you very much. The petition for review should be dismissed. Thank you. Your Honors, the It's just not practical from a judicial efficiency perspective to suggest that the individuals who are subject on a weekly basis to the use of this rule as somehow a de facto determination that these products are scheduled substances should have to defend each and every single suit when the source and the stem of the problem is this final rule. And I do believe that the Hemp 2 case is dispositive of this issue for the precise issues that were before this Court, because in that case, it was drug code 7370. And in that case, it was attempted to be expanded to include THC, the only non-marijuana sources. And the Court said, no, marijuana is a controlled substance. If it comes from other parts of the plant or extending that to present day to an entire plant variety so long as that THC content is below 0.3 percent, a la the Farm Bill, then it's not a controlled substance. And it also did the same thing as we see here, Your Honors, and that is the genus cannabis is not a controlled substance. So to take that to its logical conclusion, take an extract from the genus cannabis. Well, that encompasses things that are legal. And then you're saying a cannabinoid must be present. Cannabinoids are not illegal. So you can have those things on the shelves of your grocery store right now, Your Honors, and those things are being seized. This makes hemp plastic, hemp fuels. On Monday, we saw a major enforcement action in the State of Tennessee with DEA involvement. Are we going outside the record again? I am, Your Honor, for color, perhaps, if you would permit. Ah, okay. I want to stress the injury is real and it's apparent because this rule and its allegation that it somehow creates a scheduled substance from these materials is really the issue. Now, to sum things up, Your Honor, I would suggest very strongly, as the amicus brief suggests, that there are exceptional circumstances for the waiver issue and the allegations, and that this Court should hold that the final rule is not in accordance with U.S. law. It's an abuse of the DEA's rulemaking authority, an abuse of discretion, and it requires the invalidation of this rule, Your Honors. Thank you. Okay. Thank you very much. The case just argued is submitted. We will puzzle through it and get you an answer as soon as we can. The Court is adjourned for the day.
judges: Hawkins, Tallman, Murphy